NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-783                                    Appeals Court

GREGORY K. SCHWALM & others[1]  vs.  KAREN SCHWALM, trustee.[2]


No. 22-P-783.

Middlesex.     May 10, 2023. – July 7, 2023.

Present:  Meade, Blake, & Brennan, JJ.


Trust, Trustee's accounts, Trustee's discretion, Beneficiary.
    Uniform Trust Code.  Declaratory Relief.



    Complaint filed in the Middlesex Division of the Probate and Family Court Department on October 8, 2020.

    A motion to dismiss was heard by Christine D. Anthony, J.


    Joshua Looney (Mark Swirbalus also present) for the plaintiffs.
    Patricia Keane Martin for the defendant.


    BLAKE, J.  In this case we are asked to determine whether a trustee has a common-law duty to account to remainder beneficiaries who are not yet qualified beneficiaries under

---

[1] Paul W. Schwalm and Peter J. Schwalm.

[2] Of the William J. Schwalm Retirement Plan Trust.

G. L. c. 203E, § 103.  See Matter of the Colecchia Family Irrevocable Trust, 100 Mass. App. Ct. 504 (2021) (Colecchia). We conclude that the common-law duty to account is limited to the trustee's obligation to maintain books and records, and does not require the trustee to provide that information to nonqualified beneficiaries.  Accordingly, we affirm the judgment of dismissal.

Background.  On September 13, 2018, William J. Schwalm created the William J. Schwalm Retirement Plan Trust (trust), naming his wife, Karen Schwalm, as trustee.  William[3] died on December 29, 2019, at which time Karen became the beneficiary of the trust during her lifetime.  The plaintiffs are William's adult children from a prior marriage, Gregory, Paul, and Peter Schwalm (children).  The children are the remainder beneficiaries of the trust, and they are entitled to any remaining trust property upon Karen's death.[4]  As relevant here, the trust provides that it shall be administered "with efficiency, . . . and with freedom from judicial intervention." The trust contains a so-called privacy provision that states the

---

[3] As the parties share a surname, we use first names to avoid confusion.

[4] Pursuant to Article Six, section 6.0.1, of the trust, Gregory and Paul will each receive 47.5 percent of the remaining trust property, and Peter will receive five percent of the remaining trust property after Karen's death.

trustee has "sole and absolute discretion, to provide any information to a Permissible Distributee or Qualified Beneficiary" and "may exclude any information that [she] determines is not directly applicable to the beneficiary receiving the information."

Following William's death, the children requested that Karen provide them with certain documents, including statements of accounts and life insurance policies that funded the trust, changes to the beneficiaries of those accounts, an inventory and accounting of the trust, and a copy of the prenuptial agreement between William and Karen.[5]  Karen did not provide the documents. The children filed an "Equity Complaint for Declar[at]ory Judgment" in the Probate and Family Court seeking a declaration that Karen is required to produce the requested information and an injunction requiring Karen to deliver to the children a "complete inventory of and accounting for all assets" in William's name or held for his benefit at the time of his death. Karen filed a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), with a supporting memorandum, which the children opposed.  After a nonevidentiary hearing, the judge, in a margin notation, allowed the motion to dismiss,

---

[5] At oral argument the children conceded that they are not entitled to a copy of the prenuptial agreement under the common-law duty to account.

stating, "The Trust is clear and unambiguous regarding the Trustee's discretion to provide information to the Beneficiaries." A judgment of dismissal without prejudice entered. This appeal followed.

Discussion. 1. Declaratory relief. The children argue on appeal that the probate judge erred by implicitly concluding that they were not entitled to a declaratory judgment. Karen contends that the children failed to set forth an actual controversy sufficient to create jurisdiction under the declaratory judgment act. See G. L. c. 231A, § 1. Where, as here, the subject of a motion to dismiss is a claim for declaratory relief, we employ a two-step process. See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 18 (2018). First, we determine whether a claim for declaratory relief is "properly brought." Id. A claim is properly brought when the plaintiff demonstrates "that an actual controversy exists, . . . that the plaintiff has legal standing to sue, . . . and that all necessary parties have been joined." Id. If a claim is "properly brought," we next determine "whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss." Id. Cf. Caputo v. Moulton, 102 Mass. App. Ct. 251, 258 (2023). Assuming without deciding that the complaint set forth an actual controversy, we turn to the

question whether Karen had an obligation to provide the children with information concerning the trust, and if she did, what information the children are entitled to receive.

2.  Duty to account.[6]  The Massachusetts Uniform Trust Code (MUTC) became effective July 8, 2012.  See St. 2012, c. 140, § 56.  Because the MUTC was effective six years before the trust was established, we assume William was aware of the relevant aspects of the MUTC as it related to the trustee's obligations to the trust beneficiaries.  See Boston Safe Deposit & Trust Co. v. Wilbur, 431 Mass. 429, 435 (2000), quoting Johnson v. Johnson, 215 Mass. 276, 285 (1913) ("The testator . . . may be fairly assumed to rely upon the law of this Commonwealth for the rules to be applied in the interpretation of his testamentary words").

As relevant here, the MUTC provides that a trustee has a duty to account to qualified beneficiaries.  See G. L. c. 203E, § 813 (c).  We first must determine whether the children are qualified beneficiaries under the trust.  "'[T]he date the beneficiary's qualification is determined' . . . under the terms

---

[6] The children complain that the judge dismissed the case with a margin endorsement and without a rationale for her decision, including an analysis of the applicability of Colecchia, 100 Mass. App. Ct. at 522-523.  While this would have been helpful to the parties, particularly where the decision was dispositive of the case, our review is de novo and therefore the lack of a rationale is not an issue.

of [a] trust instrument, [is the date] on which an event occurs to trigger a beneficiary's entitlement under the trust." Colecchia, 100 Mass. App. Ct. at 506, quoting G. L. c. 203E, § 103. This principle was reaffirmed in Sacks v. Dissinger, 488 Mass. 780, 788-789 (2021), in which the court held that only qualified beneficiaries are entitled to information about a trust. Here, we conclude, and the parties agree, that the children are not qualified beneficiaries, and they will not be so qualified until Karen's death.

This does not end our analysis, however, as the children contend, under Colecchia, that Karen has a common-law duty to account and therefore they are entitled to the requested documents. In so arguing, they point to our decision in Colecchia wherein we reversed the dismissal of the plaintiff's claims for a breach of the common-law duty to account for "damages from the trustees' failure to deal properly with the proceeds from the sale of the property." Colecchia, 100 Mass. App. Ct. at 523. However, the property at issue in Colecchia was sold after the settlors died, and therefore after the plaintiff became a qualified beneficiary. See id. at 510.

Also relying on Colecchia, the children point to our recital of the long-standing principle that a trustee has a duty "to keep clear and accurate accounts with respect to the administration of [a] trust[]." Colecchia, 100 Mass. App. Ct.

at 522-523, quoting Akin v. Warner, 318 Mass. 669, 674 (1945). We do not disagree with the children that the common-law duty to account arises "from the inception of the trust." Colecchia, supra at 522. But that principle requires a trustee only to maintain the books and records of the trust, nothing more. See Akin, supra. Generally speaking, the books and records should reflect what the trust has received and expended and, if there are beneficiaries in succession, should demonstrate what expenditures are allocated to income and what are allocated to principal. See 3 A.W. Scott & M.L. Ascher, Scott and Asher on Trusts § 17.4, 1314-1315 (6th ed. 2021). The trustee's duty to provide those records to the beneficiaries is a separate obligation. It does not extend to nonqualified beneficiaries, and Colecchia does not hold otherwise. See G. L. c. 203E, § 813 (c). Had the Legislature intended to include a duty to account to nonqualified beneficiaries, it could have done so. Instead, the MUTC limited the right to receive information to qualified beneficiaries. See Guardianship of B.V.G., 474 Mass. 315, 323 (2016), citing Globe Newspaper Co., petitioner, 461 Mass. 113, 117 (2011) ("Legislature presumably is aware of statutory and common law that governs matter which it is enacting").

The children's interpretation would require us to expand the common-law duty to account despite the limiting language of

the MUTC.[7]  Much as "[w]e do not read into [a] statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include," Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006), we also decline, particularly given the Legislature's relatively recent and thorough treatment of the issue in the MUTC, to achieve the same result by simply adopting that provision as a matter of common law.  We also note that unlike Massachusetts, many States that have adopted their own version of the Uniform Trust Code have specifically included nonqualified beneficiaries as among the parties that a trustee has a duty to inform and report to.  See, e.g., Mich. Comp. Laws § 700.7814(3); N.M. Stat. Ann. § 46A-8-813(C); Va. Code Ann. § 64.2-775(C).

Our holding is also consistent with William's stated goals. In section 9.14 of the trust, William clearly and distinctly advised his beneficiaries of the importance of privacy and carefully laid out the duties of the trustee to "inform, account, and report."  See Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017) (trust instrument construed to give effect to donor's

---

[7] Section 813 (c) of the MUTC provides that "[a] trustee shall send an account . . . to other qualified beneficiaries who request it, at least annually and at the termination of the trust."  G. L. c. 203E, § 813 (c).

intention). Although divided into a marital trust and a family trust, the primary purpose of the family trust was "to provide for the well-being of [Karen] and the preservation of principal [was] not as important as the accomplishment of [that] objective." See Gershaw v. Gershfield, 52 Mass. App. Ct. 81, 87 (2001) (where primary purpose of trust instrument was to provide lifetime support for settlor's child, with discretionary disbursement to settlor's grandchildren, grandchildren were not entitled to equal shares despite trust having insufficient resources to fulfill settlor's intent). See also Sacks, 488 Mass. at 788 ("revocable trusts have become such popular will substitutes precisely because they typically remain out of probate, providing greater administrative ease and privacy"). In prioritizing his privacy, William provided Karen with limited obligations toward the children as remainder beneficiaries, to avoid just the situation at issue here.[8]

Judgment affirmed.

---

[8] Each party's request for attorney's fees and costs is denied.